IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIRGINIA GURNEY, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF OKLAHOMA ex rel. THE DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES, et al., <br><br> Defendants. | Case No. CIV-20-38-SLP |

**O R D E R**

Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted [Doc. No. 10]. Plaintiff has responded [Doc. No. 13] and Defendants have replied [Doc. No. 14].[1] The matter is fully briefed and ready for determination. For the reasons set forth, Defendants' Motion is GRANTED.

**I.   Introduction**

Plaintiff is the former Director of Internal Audit for the Oklahoma Department of Mental Health and Substance Abuse Services (the Department). She was terminated in March 2018.

Plaintiff brings a claim pursuant to 42 U.S.C. § 1983 alleging Defendants terminated her in retaliation for the exercise of her First Amendment rights.[2] Additionally, Plaintiff

---

[1] Citations to the parties' submissions reference the Court's ECF pagination.

[2] Plaintiff purports to allege violations of her rights under both the United States and Oklahoma Constitutions. Plaintiff's right to relief under § 1983 is limited to violations of her federal

brings a claim of civil conspiracy. As relief, Plaintiff seeks both monetary damages and injunctive relief.

Although the Amended Complaint further alleges a state-law-tort claim pursuant to *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989), Plaintiff states in response to Defendants' Motion that she "withdraws her *Burk* tort cause of action." Pl.'s Resp. at 6. The Court, therefore, dismisses this claim.

Defendants move for dismissal of Plaintiff's federal and state-law claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. The individual Defendants further argue the § 1983 claims should be dismissed against them on grounds of qualified immunity.[3]

Defendants argue a virtually identical case requires dismissal of each of Plaintiff's claims, citing *Poff v. Oklahoma*, Case No. CIV-14-1438-C (W.D. Okla.), *aff'd*, 683 F. App'x 691 (10th Cir. 2017) (*Poff I*). Defs.' Mot. at 6. Defendants contend "[t]he *Poff* case involved the same state agency defendant, several of the same individual defendants" and "was based on the same basic fact pattern." *Id.* Plaintiff does little to distinguish *Poff I*. Instead, she argues each case must be decided on its own facts. She points to a different

---

constitutional rights. *See Hogan v. Winder*, 762 F.3d 1096, 1112 (10th Cir. 2014) ("Under 42 U.S.C. § 1983, 'a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States.'" (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

[3] The Court finds dismissal of Plaintiff's § 1983 claims is warranted pursuant to Rule 12(b)(6). The Court, therefore, need not address the issue of qualified immunity. *Schnebelen v. Porter*, 434 F. App'x 765, 766 (10th Cir. 2011) (affirming district court's summary judgment ruling that plaintiffs failed to present sufficient evidence of a constitutional violation under § 1983 which "obviated the need for the court to reach the issue of qualified immunity"); *Allen Oil & Gas, LLC v. Klish*, 113 F. App'x 869, 870 (10th Cir. 2004) (recognizing that where dismissal was appropriate for failure to state a claim, the court need not address the issue of qualified immunity).

lawsuit brought by Ms. Poff which included a claim under § 1983 alleging First Amendment violations which survived dismissal. Pl.'s Resp. at 15 (citing *Poff v. Oklahoma*, No. CIV-15-936-R, 2016 WL 4523921 (W.D. Okla. Aug. 22, 2016) (*Poff II*)).

For the reasons discussed below, published, precedential Tenth Circuit authority establishes Plaintiff has failed to allege a violation of her First Amendment rights.[4] Based on this finding, Plaintiff's civil conspiracy claim necessarily fails. And, Plaintiff concedes dismissal of her state-law *Burk* claim. Accordingly, the claims raised in Plaintiff's Amended Complaint must be dismissed pursuant to Rule 12(b)(6).

## II. <u>Governing Standard</u>

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible if the factual content of the allegations allows the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When a complaint alleges "facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (quotation omitted). The question is whether, if the factual allegations are true, it is plausible and not merely possible that the plaintiff may obtain relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

---

[4] As such, the Court need not conduct any detailed analysis of the factual allegations at issue in the two *Poff* cases cited by the parties. The Court nonetheless agrees with Defendants that *Poff I* supports dismissal of Plaintiff's § 1983 claims, *see* Defs.' Mot. at 16-19, and that *Poff II* "involved very different facts," *see* Defs.' Reply at 7.

### III.     Factual Allegations of the Amended Complaint[5]

In July 2014, the Department hired Plaintiff and shortly thereafter she became the Director of Internal Audit.  In that role, Plaintiff was responsible for ensuring the procedures, statutes and regulations for internal auditing were followed.[6]

During the period of Plaintiff's employment, Defendant White was the Commissioner of the Department and initially served as Plaintiff's direct supervisor. Defendant Crosby served as Chief of Staff and Operations Officer for the Department and also supervised Plaintiff.  Defendant Wilson served as the Director of Specialty Courts for the Department.  Am. Compl., ¶¶ 4, 6, 8.

Plaintiff was proactive in ensuring the Department was following state and federal law.  When Defendants White, Crosby or Wilson acted to obstruct Plaintiff's performance of her duties, Plaintiff "took action to go around them to solve the issues." *Id.*, ¶ 28. Plaintiff "actively sought out the assistance of the office of the [State Auditor Inspector (SAI)] as well as other people within the [Department] to reach a resolution on the failure of the [Department] to comply with auditing procedures." *Id.*, ¶ 29.  She repeatedly spoke

---

[5] For purposes of Defendants' Motion, the Court accepts as true all well-pleaded factual allegations of the First Amended Complaint and views them in the light most favorable to Plaintiff. *Doe v School Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1304 (10th Cir. 2020).

[6] The Department, by statute, is required to "employ one or more internal auditors to establish and perform an effective and comprehensive internal audit program." Am. Compl., ¶ 14 (citing Okla. Stat. tit. 43A, § 2-205).  The program "shall include, but not be limited to, reviews of accounting procedures, internal control, financial management and compliance with laws, regulations, policies and executive and legislative directives for the Department's administrative offices, institutions, community mental health centers and contractors." *Id*.  "Internal audit final reports shall be made available to the Governor, the State Auditor and Inspector, the Legislative Service Bureau, the Board of Mental Health and Substance Abuse Services and the Commissioner of Mental Health and Substance Abuse Services." *Id*.

out within and without the Department about the need to take corrective action "to ensure that policies and procedures were developed and enacted to properly track state funds." *Id.*, ¶ 32.

During her employment Plaintiff discovered that many programs administered by the Department had not been audited for years or had never been audited. *Id.*, ¶ 33. As a result, she sought assistance from the SAI "to clarify, update and develop standards for accounting and auditing of the Drug Court Programs, the P-Card Program, the use of contract employees, and other programs where money could be easily diverted, misappropriated, and/or mismanaged within the [Department]." *Id.*, ¶ 34. Plaintiff "considered the misuse and mismanagement of state funds to be a matter of public concern." *Id.*, ¶ 37.

Defendants White and Crosby repeatedly blocked Plaintiff's efforts and told Plaintiff she was exceeding the scope of her authority. *Id.*, ¶ 41. Defendant Crosby instructed her to stop performing audits even though the audits were required by state law. *Id.* Plaintiff thought these actions were both improper and illegal and sought the assistance "as a concerned citizen" and "outside the scope of her role of Director of Auditor" to notify the office of the SAI. *Id.*, ¶ 42.

The Department terminated Plaintiff in March, 2018, after approximately four years of employment. Plaintiff believed she had been successfully performing her job and was surprised to be told that she "didn't fit" with the Department. *Id.*, ¶ 23. Although she had never received any formal performance review, Defendant Crosby had given her positive feedback about her job performance. *Id.*, ¶ 24.

Approximately forty-five days after Plaintiff was terminated, another state agency, the Department of Health (DOH) was subject to a grand jury investigation due to the failure of "the auditing program and procedures at DOH." *Id.*, ¶ 44. The Department had the same type of mismanagement of funds as the DOH and Plaintiff was working to correct these problems. *Id.*, ¶48. But her efforts were "obstructed" by Defendants White Crosby and Wilson who "knowingly and intentionally interfered with [Plaintiff's] attempts to do her job and comply with the statutory obligations." *Id.*, ¶¶ 49, 60.

The Department's failures identified by Plaintiff involved violations of state law and/or matters of great public concern and included a failure to: (1) have proper auditing and accounting procedures; (2) develop and implement proper auditing and accounting procedures; (3) properly account for and spend money in "the most useful and prudent manner"; and (4) abide by wage and hour laws and other state laws on the use of contractors in lieu of W2 employees. *Id.*, ¶¶ 52-55.

Ultimately, Plaintiff was "forced to resign." *Id.*, ¶ 136. She requested that she be permitted to retire but her retirement was not voluntary. *Id.*, ¶ 137. Her "retirement" occurred on or about March 30, 2018. *Id.*

## IV. Discussion

### A. First Amendment Claim

Section 1983 "allows an injured person to seek damages against an individual who has violated his or her federal rights while acting under color of state law." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). Plaintiff acknowledges that she

cannot bring a § 1983 claim against the State and that her § 1983 claim, therefore, is brought only against the individual Defendants in their individual capacities.[7]

A government employee retains First Amendment protections and enjoys a constitutional "right, in certain circumstances, to speak as a citizen addressing matters of public concern" *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); A public employer, nonetheless "must be able to control the operations of its workplace." *Helget v. City of Hays, Kan.* 844 F.3d 1216, 1221 (10th Cir. 2017). Thus, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.

To determine whether the Department violated Plaintiff's First Amendment rights, the Court applies the five-part *Garcetti/Pickering*[8] analysis. *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009). The analysis is designed to balance the public employee's free speech interests as a private citizen against the efficiency interests of the state, as an employer. *Joritz v. Gray-Little*, No. 19-3078, -- F. App'x --, 2020 WL 4280669 at *5 (10th

---

[7] *See* Pl.'s Resp. at 16; *see also Hobbs v. Okla. State Penitentiary*, 673 F. App'x 837, 839 (10th Cir. 2016) ("'[T]he Eleventh Amendment bars federal court jurisdiction over a state agency for both money damages and injunctive relief, or a state official acting in her official capacity in a suit for damages. . . .'" (quoting *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998)). Plaintiff's position is contrary to the allegation in the First Amended Complaint that for purposes of her § 1983 claim, the individual Defendants were "acting in their official capacity at all relevant times hereto." Am. Compl., ¶ 141. That allegation alone requires dismissal of Plaintiff's § 1983 claim. The Court, however, construes the Amended Complaint to alternatively allege a claim against Defendants in their individual capacities. The caption of the Amended Complaint identifies each Defendant "individually" and in his or her "official capacity."

[8] *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

Cir. July 27, 2020); *see also Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 745 (10th Cir. 2010) (*Garcetti/Pickering* analysis balances the competing interests of a public employee's right to free speech and the government employer's right to exercise a significant degree of control over the employee's words and actions).

The five-part analysis is comprised of the following:

(1) whether the speech was made pursuant to an employee's official duties;

(2) whether the speech was on a matter of public concern;

(3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests;

(4) whether the protected speech was a motivating factor in the adverse employment action; and

(5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Dixon*, 553 F.3d at 1302.

Defendants move for dismissal solely under the first element of the *Garcetti/Pickering* analysis. Defendants argue Plaintiff's speech was made pursuant to her official duties and, therefore, no cognizable claim is stated. This inquiry is a question of law for the court. *Helget*, 844 F.3d at 1222.[9]

No bright-line rule exists to determine whether speech is made pursuant to an employee's official duties. *Rohrbough*, 596 F.3d at 746. Instead, the inquiry is a "practical

---

[9] Because Defendants only move for dismissal only on the first element of the *Garcetti/Pickering* test, the Court does not consider whether Plaintiff's claims are sufficient on any of the other elements.

one" and must be made on a "case-by-case" basis. *Id*. The Tenth Circuit takes "a broad view of the meaning of speech that is pursuant to an employee's official duties." *Id*. Speech can be considered part of an employee's duties if it "reasonably contributes to or facilitates the employee's performance of the official duty . . . ." *Thomas v. City of Blanchard*, 548 F.3d 1317, 1324 (10th Cir. 2008). And, "speech may be made pursuant to an employee's official duties even if it deals with activities that the employee is not expressly required to perform." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1203 (10th Cir. 2007). The "guiding principle" is whether the speech involves the type of activities the employee was paid to do. *Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708, 713 (10th Cir. 2010); *see also Rohrbough*, 596 F.3d at 747 (the court's focus is whether the speech stemmed from and was of the type the employee was paid to do "regardless of the exact role of the individual or entity to which the employer has chosen to speak").

Defendants argue that Plaintiff's speech, as alleged, was clearly pursuant to her job duties as Director of Internal Audit for the Department. Defendants point to the fact that those duties are "broadly defined by statute." Defs.' Mot. at 17. Defendants further argue that Plaintiff's "chain of command was sweepingly broad" and that the other entities to whom Plaintiff reported outside the Department fell within her chain of command. Defs.' Mot. at 18. Defendants contend that the Amended Complaint fails to identify "a single time that the plaintiff ever stepped outside her role as an auditor and into the shoes of a private citizen to engage in protected speech." *Id*.

9

In response, Plaintiff urges that the issue before the Court may only be resolved upon a developed record. Pl.'s Resp. at 11-12; *see also id*. at 15. This argument ignores the fact that the first three prongs of the *Garcetti/Pickering* analysis involve questions of law and that courts routinely address the sufficiency of a plaintiff's allegations in the context of a Rule 12(b)(6) motion. *See, e.g., Butler v. Bd. of Cty. Comm'rs for San Miguel Cty*., 920 F.3d 651, 665 (10th Cir. 2019) (affirming dismissal of the plaintiff's § 1983 claim alleging violations of First Amendment rights under second prong of *Garcetti/Pickering* test, concluding speech was not a matter of public concern); *Poff I,* 683 F. App'x at 698 (affirming dismissal under first prong of *Garcetti/Pickering* test because the plaintiff's speech was "made within the scope of their public employment"). Fundamentally, Plaintiff's argument ignores the pleading burden placed upon her to demonstrate a plausible claim for relief.

Plaintiff's remaining arguments are two-fold. First, she challenges Defendants' reliance upon the scope of her job duties and contends her job description is overly broad and, therefore, "insufficient to bring all her speech within the confines of her official duties." Pl.'s Resp. at 13. Second, she argues her communications with Defendant Wilson, people from the SAI's office and the Department's CFO, Juarez McCann, were made outside her chain of command and, as such, that speech was outside the scope of her official duties.[10]

---

[10] Plaintiff concedes that Defendants White and Crosby were within her chain of command. *See* Pl's Resp. at 13 (citing Am. Compl., ¶¶ 4. 6).

The Court finds the allegations of the Amended Complaint show the speech at issue was made pursuant to Plaintiff's official duties.[11]  The Court rejects Plaintiff's overbreadth argument.  The Department did not create Plaintiff's job description.  Instead, the scope of her duties are statutorily defined under Oklahoma law.  *See* supra, n. 6.  Those duties are comprehensive and Plaintiff fails to point to any allegations that show the speech at issue did not fall within the parameters of those comprehensive duties.  At base, her job was audit driven and the speech at issue arises from her audit duties.

The Amended Complaint categorizes four specific areas of concern: (1) Drug Court Concerns (¶¶ 70-83); (2) the P-Card Audit (¶¶ 84-111); (3) the Internal Cash Control Questionnaire (¶¶ 112-115); and (4) the Corporate Culture Questionnaire (¶¶ 116-133).  The Amended Complaint further identifies "Other Concerns" (¶¶ 134-139).

As to each of the identified areas of concern, a review of the allegations demonstrates the concerns raised by Plaintiff were based on information she discovered and investigated as part of her job and her communications were directed at trying to resolve the issues underlying those concerns.  *Cf. Duvall v. Putnam City Sch. Dist., Indep. Schools*, 530 F. App'x 804, 814 (10th Cir. 2013) (finding speech to plaintiff's supervisors and other individuals within the school district was undertaken in the course of official duties where responsibility as a special educator was to ensure compliance with state and federal law); *Chavez-Rodriguez*, 596 F.3d at 714 (statements were made pursuant to

---

[11] Plaintiff alleges that she spoke out on "matters of public concern" as a "private citizen."  But whether Plaintiff was speaking pursuant to her job duties is a question of law for the Court, notwithstanding Plaintiff's conclusory statements to the contrary.

official duties where during banquet Director of Division of Senior Services voiced budgeting concerns to Speaker of the New Mexico House of Representatives who was also a close friend; "content of speech indicates the conversation was more akin to a work discussion between two public officials than small talk at a party"); *Casey v. West Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1331-32 (10th Cir. 2007) (director of local Head Start program acted pursuant to official duties when consistent with disclosure obligations attending her authority over the federally funded program, she informed regional Head Start office of school district's noncompliance with regulations governing program funds).

Plaintiff fails to identify any speech similar to that type of speech the Tenth Circuit has recognized as protected speech. As noted in *Poff I*, "[e]xamples of protected government employee speech include activity afforded [to] citizens such as communicating with newspapers or legislators, or discussing politics with a coworker." *Id*. at 698 (internal quotation marks and citation omitted). In contrast, "speech pursuant to the employee's duty to report a particular activity is usually within that employee's official duties under *Garcetti/Pickering*." *Id*. (internal quotations, alteration and citation omitted). Plaintiff's allegations clearly identify speech falling within the latter category.[12]

---

[12] In *Vercos v. Bd. of Cty. Comm'rs*, 259 F. Supp.3d 1169 (D. Colo. 2017) the court compared examples of Tenth Circuit case law finding speech unprotected with examples of Tenth Circuit case law finding speech protected. *See id*. at 1174 (comparing *Rohrbough*, 596 F.3d at 748, *Holub v. Gdowski*, 802 F.3d 1149, 1153, 1156 (10th Cir. 2015), *Green v. Bd. of Cty. Comm'rs*, 472 F.3d 794, 796, 800-01 (10th Cir. 2007) and *Chavez-Rodriguez*, 596 F.3d at 714 with *Casey*, 473 F.3d at 1329-32 (10th Cir. 2007), *Thomas v. City of Blanchard*, 548 F.3d 1317, 1325 (10th Cir. 2008) and *Reinhardt v. Albuquerque Public Schools Bd.*, 595 F.3d 1126, 1136-37 (10th Cir. 2010). A review of those cases, as more fully addressed in *Vercos*, further compels finding the speech at issue here is in line with the examples of case law finding speech unprotected because it was made within the employee's official duties.

The Court also rejects Plaintiff's "chain-of-command" argument. Her allegations do not suggest she was speaking outside the chain of command. Communications to the SAI are statutorily required. Communications to the Department's CFO about matters related to her auditing duties demonstrates speech made pursuant to her official duties. Moreover, communications to Defendant Wilson included developing standards for accounting and auditing of the Drug Court Programs. *See, e.g.*, Am. Compl., ¶ 34; *see also id.*, ¶¶ 60, 70, 74, 185.

Otherwise, Plaintiff's allegations concerning speech outside the chain of her command are wholly conclusory and fail to identify to whom she directed her speech. *See, e.g.*, Am. Compl., ¶ 37 (Plaintiff "took it upon herself to tell *others* about her concerns and findings . . . .") (emphasis added); *id.*, ¶ 38 (Plaintiff "spoke out" about White's previous role as the Interim Director of the Department of Human Services (DHS) while also acting as the Director of [the Department]."); *id.*, ¶ 42 (Plaintiff "acted outside the scope of her role of Director of Auditor as a concerned citizen to express to the SAI *and others* that [the Department] was not complying with state law and not acting as a good steward of state and federally appropriated money") (emphasis added); *id.*, ¶ 56 (Plaintiff spoke out "to leadership in the agency and outside the agency"); *id.*, ¶ 57 (Plaintiff sought to resolve concerns "by contacting the SAI *and others* for their assistance") (emphasis added); *id.*, ¶ 64 (Plaintiff "attempted to resolve these concerns [over the Department's non-compliance with regulations and state law] by addressing them *within and outside the agency*") (emphasis added); *id.*, ¶ 148 (Plaintiff's "attempts at speaking to individuals *both within and outside* [the Department] constituted protected free speech and redress of the

government") (emphasis added). As the Tenth Circuit has made clear, "chain of command is merely one factor suggesting, under certain circumstances, that an employee's speech is not job related. It does not, however, control the inquiry." *Chavez-Rodriguez*, 596 F.3d at 715.

In sum, the allegations of the Amended Complaint demonstrate the speech stemmed from Plaintiff's duties as Director of Internal Audit and were of the type she was paid to perform. *Chavez-Rodriguez*, 596 F.3d at 716 (citation omitted); *see also Rohrbough*, 596 F.3d at 7447("[T]he proper focus is ultimately still whether the speech stemmed from and was of the type that the employee was paid to do, regardless of the exact role of the individual or entity to which the employee has chosen to speak." (internal quotation omitted).

Indeed Plaintiff expressly alleges that she revealed the wrongdoing of the Department because she "insisted on doing her job too well." Am. Compl., ¶ 25; *see also id*., ¶ 60 (Plaintiff "attempted to *do her job* and communicate with the [SAI] at all time in regard to complying with state statutes, policies and IIA standards; however Defendants . . . intentionally interfered with [Plaintiff's] attempts *to do her job and comply with the statutory obligations*") (emphasis added). Where, as here, the plaintiff admits her speech was within the scope of her employment, the Court need not go any further with the *Garcetti/Pickering* analysis. *Poff I*, 683 F. App'x at 698. The nature of the speech as alleged indicates it was not undertaken as a private citizen but was made "during the course of performing an official duty [aimed at] facilitating[ing] [her] performance of the official duty." *Brammer-Hoelter*, 492 F.3d at 1203. As a result, Plaintiff's speech is not entitled

14

to First Amendment protection and Plaintiff has failed to state a plausible claim for relief under § 1983 for a violation of her constitutional rights.

### B.     Civil Conspiracy Claim[13]

Plaintiff also brings a claim for civil conspiracy and alleges Defendants conspired "to create a hostile work environment and to retaliate against [her], including attempting to constructively discharge her" for exercising her First Amendment rights. Am. Compl., ¶ 199. She further alleges Defendants acted "under color of state law." *Id*., ¶ 203.

"[T]o recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Dixon v. City of Lawton, Okla.*, 898 F.2d 1443, 1449 (10th Cir. 1990). "This is because the essence of a § 1983 claim is the deprivation of the right rather than the conspiracy." *Id*.

The Court has found Plaintiff has failed to plead the deprivation of a constitutional right, i.e., she has not stated a plausible claim for a violation of her First Amendment rights. As such, her civil conspiracy claim necessarily fails. *See Hinkle v. Beckham Cty. Bd. of Cty. Comm'rs*, 962 F.3d 1204, 1231 (10th Cir. 2020) (where plaintiff failed to sufficiently

---

[13] "Allegations of conspiracy . . . may for the basis of a § 1983 claim." *See Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998); *see also Banks v. Opat*, 814 F. App'x 325, 337 n. 14 (10th Cir. 2020) ("To the extent Mr. Banks is attempting to assert a federal common-law conspiracy claim, courts generally construe such claims as § 1983 conspiracy claims, and we do the same."). However, it is unclear whether Plaintiff is pursuing a civil conspiracy claim under § 1983, as a matter of federal law, or pursuant to Oklahoma law. The Amended Complaint does not state upon which law the claim is predicated. Moreover, the parties' briefing is unclear on this point. Therefore, the Court addresses the claim under both federal and state law.

plead allegations to support a constitutional violation premised on allegations of false arrest, his conspiracy claim, premised on the false-arrest allegations, was properly dismissed); *Al-Turki v. Tomsic*, 926 F.3d 610, 621 n. 7 (10th Cir. 2019) ("Plaintiff does not contest that if he cannot state a procedural-due-process claim, he necessarily cannot state a claim of conspiracy to violate his due-process rights."). Dismissal of any federal-law based civil conspiracy claim, therefore, is proper.

For substantially the same reasons, any claim of civil conspiracy brought pursuant to Oklahoma law fails. Plaintiff essentially acknowledges the same. *See* Pl.'s Resp. at 18 ("If the act complained of and the means employed are lawful, no liability exists." (citing *Brock v. Thompson*, 948 P.2d 279, 294 (Okla. 1997)). The Court further finds, therefore, that any state-law-conspiracy claim should be dismissed.

## V. Conclusion

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted [Doc. No. 10] is GRANTED and the claims raised in Plaintiff's Amended Complaint are DISMISSED WITH PREJUDICE.[14]

---

[14] Defendants expressly move for dismissal with prejudice on grounds leave to amend would be futile, noting that Plaintiff has already amended her pleading once. In response, Plaintiff leaves the issue of amendment wholly unaddressed and has not separately filed a motion requesting leave to amend. Under these circumstances, and based on the analysis set forth above, the Court agrees and finds a dismissal with prejudice is proper. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."); *see also Doe v. Heil*, 533 F. App'x 831, 847 (10th Cir. 2013) ("[W]e will not upset the district court's dismissal with prejudice on the grounds that it failed sua sponte to give [the plaintiff] – who was represented by counsel – an opportunity to file an amended complaint.").

A separate judgment of dismissal will be entered contemporaneously with this Order.

IT IS SO ORDERED this 30th day of September, 2020.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE